IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

SARA LABOE,
Plaintiff,

v.

KEVIN SHOOK,

and

TRANSYLVANIA COUNTY,
NORTH CAROLINA,
Defendant.

Case No.: _____

**COMPLAINT**

JURY DEMAND HEREIN

NOW COMES the Plaintiff, SARA LABOE, by and through undersigned counsel, and files this Amended Complaint.

PARTIES, JURISDICTION & VENUE

1. The Plaintiff, Sara Laboe ("Ms. Laboe"), is a natural person, a woman, domiciled in Transylvania County, North Carolina, an "employee" as defined by 42 U.S.C. § 2000e, and a "career State employee" as defined by N.C. Gen. Stat. § 126-1.1.

2. Defendant Kevin Shook ("Mr. Shook") is a natural person, the Emergency Management Director for Transylvania County responsible for the operations of the Transylvania County Animal Shelter, and at all times relevant herein exercised supervisory authority over Ms. Laboe.

3. Defendant Transylvania County, North Carolina ("Transylvania County") is a governmental subdivision of the State of North Carolina, is a municipal entity organized under the North Carolina Constitution and the laws of the State of North Carolina, has an elected Board of Commissioners has the authority to sue and be sued, and, upon information and belief, was at all

times relevant herein acting within the course and scope of authority of its authority under color of law and is an "employer" as defined by 42 U.S.C. § 2000e.

4. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1983, 42 U.S.C. § 1985, *Monell v. Dep't of Social Services*, 436 U.S. 658 (1977), the First Amendment to the United States Constitution, Article 49 of Chapter 143 of the North Carolina General Statutes, Article 14 of Chapter 126 of the North Carolina General Statutes, and other state and/or federal law.

5. Ms. Laboe has exhausted her administrative remedies in that she filed a charge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, et seq., and N.C. Gen. Stat. § 143-422.2 with the United States Equal Employment Opportunities Commission ("EEOC") through the Civil Rights Division of the North Carolina Office of Administrative Hearings setting forth the facts and circumstances supporting her claims herein and received notice of her right to sue.

6. The court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(3), and 1367 because the Plaintiff alleges claims based in federal law to redress the deprivation, under color of state law, statute, ordinance, regulation, custom or usage, of rights secured by the Constitution of the United States, and because this case alleges state law claims that are so related to claims in the action within the original jurisdiction of this court that they form part of the same case or controversy under Article III of the United States Constitution.

7. The court has authority to grant the relief prayed for herein pursuant to 42 U.S.C. §§ 1981a, 1988, 2000e-5, and other federal and state law.

## JURY DEMAND

8. Pursuant to the Seventh Amendment to the United States Constitution, the Plaintiff hereby requests a jury trial on all issues and claims set forth in this Complaint.

## FACTS

9. For over five years prior to November 12, 2021, Ms. Laboe was an employee of Transylvania County where she first served as an Animal Shelter Vet Tech before being promoted to Animal Shelter Manager in 2018.

10. On or around November 12, 2021, Ms. Laboe received notice from Mr. Shook as to the final decision to terminate her employment with Transylvania County allegedly due to misappropriating funds.

11. Upon information and belief, the animal shelter has a "Donations Account" established to hold funds donated to the animal shelter for the purpose of covering the cost of medical care for animals in the custody of the animal shelter, and Ms. Laboe personally obtained over Twenty Thousand and No/00 Dollars ($20,000) during her time working in the animal shelter.

12. In March 2021, Ms. Laboe approved the use of funds in the said Donations Account for the care of a severely abused cat that had been rescued and delivered to the office of Dr. Ann Davis, DVM ("Dr. Davis") approximately eight months prior to her termination. Upon information and belief, Dr. Davis regularly assisted with the provision of medical care to animals in the custody of the animal shelter.

13. Upon information and belief, prior to November 12, 2021, Ms. Laboe, in her capacity as Animal Shelter Manager, had authority to authorize the use of funds in the said Donations Account for the care of animals in the custody of the shelter and had done so many times without ever being disciplined, reprimanded, or otherwise told not to do so.

14. Upon information and belief, sometime during 2021, Mr. Shook, without notice to Ms. Laboe, authorized the use of approximately Twenty-Seven Thousand and No/00 Dollars ($27,000)

in the Donations Account for maintenance and/or improvements to the animal shelter building instead of provision of medical care to animals in the custody of the animal shelter.

15. Upon information and belief, on or around November 9, 2021, Ms. Laboe requested to meet with Mr. Shook to discuss his (Shook's) authorization of funds from the said Donations Account to be used for animal shelter building maintenance and/or improvement costs rather than care for animals in the custody of the animal shelter.

16. Upon information and belief, said meeting took place on November 12, 2021, but rather than facilitating the purposes for which Ms. Laboe requested the meeting, Mr. Shook informed Ms. Laboe that the meeting was to provide Ms. Laboe her only opportunity to defend herself regarding her decision from March 2021. Ms. Laboe was given no other notice about the true intent of the meeting or opportunity to gather information or otherwise prepare.

17. Upon information and belief, Shelia Cozart of Transylvania County Human Resources was present during the said November 12, 2021, meeting between Ms. Laboe and Mr. Shook.

18. Upon information and belief, Ms. Laboe's termination was grossly disproportionate to any so-called misconduct for which a state employee may receive some form of disciplinary action.

19. Upon information and belief, Ms. Laboe's termination for supposed misconduct was pretextual and the true basis for her termination is her status as a woman as shown by the policy and/or practice of Transylvania County supervisory employees, including one or more of the Defendants named herein, failing to likewise discipline male employees for violations of protocol, policy, and/or North Carolina law, including but not limited to:

   a. failing to terminate or otherwise discipline a male employee who brought a firearm into the animal shelter and discharged it inside the building in violation of employee policy and protocol and North Carolina law; and

4

Case 1:22-cv-00156-MOC-WCM   Document 1   Filed 08/10/22   Page 4 of 15

b. other such instances of disproportionate disciplinary action or lack thereof to be shown at trial.

20. Upon information and belief, Ms. Laboe's termination for supposed misconduct was pretextual and the true basis for her termination was retaliation for raising concerns about Mr. Shook's misuse of funds in the said Donations Account as shown by:

a. Ms. Laboe had a long history of authorizing the use of funds from the said Donations Account for the costs of care for animals in the custody of the shelter and had done so many times without ever being disciplined, reprimanded, or otherwise told not to do so;

b. Ms. Laboe, as Animal Shelter Manager, had authority to authorize the use of funds in the said Donations Account for animal care costs as she did in March 2021;

c. Ms. Laboe authorized the use of funds from the said Donations Account in March 2021 consistently with the common manner and practice she used many times before;

d. The alleged incident for which Ms. Laboe was terminated occurred over eight months prior to any disciplinary action being taken against her;

e. The funds in the said Donations Account were obtained from donors for the purpose of covering the cost of care for animals in the custody of the animal shelter;

f. There was no indication of any intent to take any disciplinary action against Ms. Laboe for her decision to authorize care in March 2021 until after she requested a meeting with Mr. Shook address his use of funds from the said Donations Account for animal shelter building maintenance instead of animal care; and

g. The disciplinary action taken against Ms. Laboe was grossly disproportionate to any so-called misconduct even if she would have committed the misconduct so alleged by Mr. Shook.

21. Upon information and belief, Transylvania County supervisory employees and policymakers, including one or more Defendants named herein, have maintained a policy, custom, or pattern of promoting, facilitating, and condoning the violation of state or federal laws, rules, ordinances, codes, and/or regulations including but not limited to unlawful discharge and/or wrongful termination employees that are female.

22. Upon information and belief, Transylvania County supervisory employees and policymakers, including one or more Defendants named herein, have maintained a policy, custom, or pattern of promoting, facilitating, and condoning the violation of state or federal laws, rules, ordinances, codes, and/or regulations including but not limited to unlawful discharge and/or wrongful termination employees on the basis of retaliation.

23. Upon information and belief, Transylvania County and agents thereof have waived the defense of sovereign immunity through the purchase of liability insurance or participation in a qualifying risk pool.

## CLAIM I
## Violation of Title VII of the Civil Rights Act of 1964 by Transylvania County

24. The above paragraphs are hereby incorporated by reference as if fully set forth herein.

25. Pursuant to 42 U.S.C. § 2000e-2(a)(1), it is an unlawful employment practice for an employer to discharge any individual because of such individual's sex, and an individual's "sex." *See Bostock v. Clayton Cnty.*, 140 S.Ct. 1731 (2020).

26. Upon information and belief, Transylvania County is an "employer" as defined by 42 U.S.C. § 2000e.

27. Upon information and belief, Transylvania County supervisory employees and policy makers have maintained a policy, custom, or pattern of promoting, facilitating, and condoning the violation of state or federal laws, rules, ordinances, codes, and/or regulations including but not limited to unlawfully discharging and/or wrongfully terminating female employees.

28. The true basis for Ms. Laboe's termination from Transylvania County is her status as a woman, and said termination is consistent with Transylvania County's policy, custom, or pattern of discriminating against female employees as shown by its history of failing to likewise discipline male employees, including but not limited to failing to terminate or otherwise discipline a male employee who brought a firearm into the animal shelter and discharged it inside the building in violation of employee policy and protocol and North Carolina law.

29. Upon information and belief, Ms. Laboe was not terminated for the pretextual reason of alleged misappropriation of funds but rather she was truly terminated for being a woman in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

30. As a result of her termination from Transylvania County in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), Ms. Laboe has suffered damages for which Transylvania County is liable and for which she can recover.

## CLAIM II
### Wrongful Discharge on the basis of sex by Transylvania County

31. The above paragraphs are hereby incorporated by reference as if fully set forth herein.

32. Wrongful discharge claims have been recognized in North Carolina where the employee was discharged...based on some activity of the employer contrary to public policy." *Combs v. City Elec. Supply Co.,* 203 N.C. App. 75, 690 S.E.2d 719, 723 (2010) (citing *Ridenhour v. IBM Corp.,* 132 N.C. App. 563, 537 S.E.2d 481 (1999)).

33. An employer wrongfully discharges an at-will employee if the termination is done for 'an unlawful reason or purpose that contravenes public policy.'" *See Bigelow v. Town of Chapel Hill,* 227 N.C. App. 1, 745 S.E.2d 316 (2013).

34. Unlawful discharge purposes, or those contravening public policy, are set forth in N.C. Gen. Stat. § 143-422.2, stating employment discrimination based on sex is against public policy.

35. Transylvania County is an "employer" within the meaning of N.C. Gen Stat § 143-422.2.

36. Upon information and belief, the Transylvania County Animal Shelter is an agent or extension of Transylvania County.

37. Upon information and belief, true basis for Ms. Laboe's termination from Transylvania County is her status as a woman, and said termination is consistent with Transylvania County's policy, custom, or pattern of discriminating against female employees as shown by its history of failing to likewise discipline male employees, including but not limited to failing to terminate or otherwise discipline a male employee who brought a firearm into the animal shelter and discharged it inside the building in violation of employee policy and protocol and North Carolina law.

38. Upon information and belief, Ms. Laboe's termination because of her status as a woman is in violation of North Carolina public policy as set forth in N.C. Gen. Stat. § 143-422.2.

39. As a result of the wrongful termination, Ms. Laboe has suffered damages for which she can recover and for which Transylvania County is liable.

### CLAIM III
### Wrongful Discharge as retaliatory act by Transylvania County

40. The above paragraphs are hereby incorporated by reference as if fully set forth herein.

41. Pursuant to N.C. Gen. Stat. § 126-84, it is the policy of North Carolina that state employees "shall have a duty to report verbally or in writing to the appropriate authority evidence of certain

illegal activity by a State agency or State employee" constituting (1) a violation of State or federal law, rule or regulation; (2) fraud; (3) misappropriation of State resources; (4) substantial and specific danger to the public health and safety; or (5) gross mismanagement, a gross waste of monies, or gross abuse of authority.

42. Pursuant to N.C. Gen. Stat. § 126-85, it is against the policy of North Carolina for any state department, agency, or institution, or other state employee exercising supervisory authority to discharge, threaten, or otherwise discriminate against a state employee because the state employee or a person acting on behalf of the employee reports any activity set forth in § 126-84.

43. Wrongful discharge claims have been recognized in North Carolina where the employee was discharged...for engaging in a legally protected activity..." *Combs v. City Elec. Supply Co.,* 203 N.C. App. 75, 690 S.E.2d 719, 723 (2010) (citing *Ridenhour v. IBM Corp.,* 132 N.C. App. 563, 537 S.E.2d 481 (1999)). "An employer wrongfully discharges an at-will employee if the termination is done for 'an unlawful reason or purpose that contravenes public policy.'" *See Bigelow v. Town of Chapel Hill,* 227 N.C. App. 1, 745 S.E.2d 316 (2013)

44. Upon information and belief, the following shows intent on the part of the Animal Shelter and/or Transylvania County to wrongfully discharge Ms. Laboe as a means of retaliation:

    a. Ms. Laboe had a long history of authorizing the use of funds from the said Donations Account for the costs of care for animals in the custody of the shelter and had done so many times without ever being disciplined, reprimanded, or otherwise told not to do so;

    b. Ms. Laboe, as Animal Shelter Manager, had authority to authorize the use of funds in the said Donations Account for animal care costs as she did in March 2021;

c. Ms. Laboe authorized the use of funds from the said Donations Account in March 2021 consistently with the common manner and practice she used many times before;

d. The alleged incident for which Ms. Laboe was terminated occurred over eight months prior to any disciplinary action being taken against her;

e. The funds in the said Donations Account were obtained from donors for the purpose of covering the cost of care for animals in the custody of the animal shelter;

f. There was no indication of any intent to take any disciplinary action against Ms. Laboe for her decision to authorize care in March 2021 until after she requested a meeting with Mr. Shook address his use of funds from the said Donations Account for animal shelter building maintenance instead of animal care; and

g. The disciplinary action taken against Ms. Laboe was grossly disproportionate to any so-called misconduct even if she would have committed the misconduct so alleged by Mr. Shook.

45.

46. As a result of the wrongful termination, Ms. Laboe has suffered damages for which the Animal Shelter and/or Transylvania County is liable.

## CLAIM IV
**Violation of Ms. Laboe's First Amendment Rights by Mr. Shook**
**42 U.S.C. § 1983**

47. The above paragraphs are hereby incorporated by reference as if fully set forth herein.

48. Pursuant to 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

49. Where the interests of the employee as a citizen in commenting on matters of public concern outweigh the State's interests as employer in having an efficient workplace, the employee's speech is protected by the First Amendment to the United States Constitution. *See Pickering v. Board of Education,* 391 U.S. 563 (1968).

50. Upon information and belief, inquiries, comments, and/or statements made by Ms. Laboe to Mr. Shook regarding the use of donated funds in the said Donations Account for costs of maintenance and/or improvements to the animal shelter building rather than the cost of care for animals in the shelter's custody is a matter of public concern outweighing the State's interests as employer because the funds in the said Donations Account were donated with the understanding that said funds would be used to cover the cost of medical care for animals in the custody of the shelter, but Mr. Shook authorized the use of said funds for other purposes.

51. Upon information and belief, Ms. Laboe was not truly terminated for misappropriation of funds as claimed by Mr. Shook but rather the true basis for Ms. Laboe's termination was retaliation by Mr. Shook as shown by the following circumstances:

    a. Ms. Laboe had a long history of authorizing the use of funds from the said Donations Account for the costs of care for animals in the custody of the shelter and had done so many times without ever being disciplined, reprimanded, or otherwise told not to do so;

    b. Ms. Laboe, as Animal Shelter Manager, had authority to authorize the use of funds in the said Donations Account for animal care costs as she did in March 2021;

    c. Ms. Laboe authorized the use of funds from the said Donations Account in March 2021 consistently with the common manner and practice she used many times before;

    d. The alleged incident for which Ms. Laboe was terminated occurred over eight months prior to any disciplinary action being taken against her;

    e. The funds in the said Donations Account were obtained from donors for the purpose of covering the cost of care for animals in the custody of the animal shelter;

    f. There was no indication of any intent to take any disciplinary action against Ms. Laboe for her decision to authorize care in March 2021 until after she requested a meeting with Mr. Shook address his use of funds from the said Donations Account for animal shelter building maintenance instead of animal care; and

    g. The disciplinary action taken against Ms. Laboe was grossly disproportionate to any so-called misconduct even if she would have committed the misconduct so alleged by Mr. Shook.

52. Upon information and belief, Ms. Laboe suffered retaliatory termination as the result of exercising her rights under the First Amendment by Mr. Shook, and such retaliatory action would likely chill a person of ordinary firmness from continuing to exercise their free speech rights under the First Amendment.

53. Upon information and belief, Ms. Laboe has suffered damages directly and proximately caused by Mr. Shook's violation of her First Amendment rights for which he is liable and Ms. Laboe can recover.

### CLAIM V
### Violation of Ms. Laboe's First Amendment Rights by Transylvania County
### 42 U.S.C. § 1983

54. The above paragraphs are hereby incorporated by reference as if fully set forth herein.

55. Pursuant to 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects any citizen of the United States to the deprivation

of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

56. For the purposes of 42 U.S.C. § 1983, a municipality is considered a "person" and therefore subject to being sued. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978).

57. Where a government's policy or custody made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy inflict injury, the government entity is responsible under 42 U.S.C. § 1983. *Id.* "Official policy" often goes beyond formal ordinance and policies to refer to formal rules or understandings, not always committed to writing, that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently over time. *Id.* "A government policy or custom need not have received formal approval through the municipality's official decision-making channels to subject the municipality to liability." *Riddick v. Sch. Bd.,* 238 F.3d 518, 522 (4th Cir. 2000). "In assessing whether a municipality may be held liable for the constitutional or statutory violations of their decisionmakers, the touchstone inquiry is whether the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Liverman v. City of Petersburg,* 844 F.3d 400, 413 (4th Cir. 2016).

58. Upon information and belief, Mr. Shook, as Emergency Management Director for Transylvania County, and Transylvania County are jointly and severally responsible for establishing, enforcing, directing, supervising, and controlling the customs, practices, usages, and procedures applicable to the Transylvania County Animal Shelter such that their edicts, acts, directions, or lack thereof, regarding customs, practices, usages, and procedures represent official policy of the Transylvania County Animal Shelter.

59. Upon information and belief, Mr. Shook and/or Transylvania County know or should know that they have maintained a policy, custom, or pattern of promoting facilitating and condoning retaliation against employees, with said policy, custom, or pattern never being reduced to writing, but several current and/or former Transylvania County employees intend to serve as witnesses and testify to said policy, custom, or pattern.

60. Upon information and belief, any reasonable policymaker would know that the custom and usage maintained by Mr. Shook and/or Transylvania County would lead to violations of civil rights of Transylvania County employees such as the violations suffered by Ms. Laboe and that said custom and usage would likely chill a person of ordinary firmness from continuing to exercise their free speech rights under the First Amendment as to matters of public concern regarding Transylvania County.

61. As a result of the violation of her free speech rights under the First Amendment by Transylvania County, Ms. Laboe has suffered damages for which she can recover and for which Transylvania County is liable.

## **COSTS, ATTORNEYS FEES, AND PUNITIVE DAMAGES**

62. The above paragraphs are hereby incorporated by reference as if fully set forth herein.

63. Upon information and belief, the Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988.

64. The above paragraphs are hereby incorporated by reference as if fully set forth herein. Upon information and belief, the conduct of Mr. Shook amounting to violation of Ms. Laboe's civil rights under the First Amendment of the United States Constitution and/or North Carolina public policy were done with malice and/or evil motive or intent, therefore the Plaintiff is

entitled to an award of punitive damages in an amount to be proven at trial. *See Smith v. Wade,* 461 U.S. 30, 56 (1983); N.C. Gen. Stat. § 1D-15.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays the Court for the following relief:

1. That the Plaintiff have and recover from the Defendants an amount in excess of Two Hundred Fifty Thousand and No/00 Dollars ($250,000.00) as permitted by applicable federal and state law accounting for the Plaintiff's consequential, nominal, punitive, costs, and attorney's fees suffered;

2. That the Court awarded Plaintiff pre-judgment and post-judgment interest and recovery of costs, including reasonable attorney's fees;

3. That this Court adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

4. That the Plaintiff have a trial by jury on all issues and claims so triable; and

5. That this Court grant such other and further relief as deemed equitable and just under the circumstances.

Respectfully submitted this the 10th day of August 2022.

| | /s/ Nicholas White |
|---|---|
| Stephen P. Lindsay | Nicholas A. White |
| N.C. State Bar: 13017 | N.C. State Bar #53661 |
| 46 Haywood St., Suite 200 | 900 Hendersonville Rd, Ste 307 |
| Asheville, N.C. 28803 | Asheville, N.C. 28803 |
| (828) 551-6446 | (828) 229-5000 |
| spl@lindsaylaw.org | nwhite@kinglawoffices.com |